**Application of William L. ELLIS.**
**Patent Appeal No. 8860.**

United States Court of Customs and Patent Appeals.
April 26, 1973.

Francis D. Thomas, Jr., Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, sustaining the examiner's rejection of claims 1–5, all the claims in appellant's application.[1]

*The Invention*

The claimed invention relates to floor gratings, and can be sufficiently understood from a reading of claim 1 with reference to appellant's Figure 3:

FIG. 3

1. A floor grating, comprising: a plurality of main support members [12], a plurality of secondary support bars [16] supported by said members and extending in fixed parallel spaced relation therebetween,

a plurality of closely spaced wire rod members [18] secured to said secondary load bearing support bars and extended in parallel relation transversely thereacross for providing a walking surface thereover,

said secondary load bearing support bars being sufficiently deep and closely spaced to support said wire rod members for pedestrian traffic without undue flexing therebetween,

and said wire rod members being spaced in the order of ⅛ inch or less apart and having an exposed upper

1. Serial No. 618,203, filed February 23, 1967.

surface area more than one-half the open spacing therebetween for providing a substantially contiguous walking surface for pedestrian traffic thereover and the passage of snow and dirt therethrough.

Claim 2 requires that the wire rod members be tapered, to more readily pass dirt and debris. Claims 3–5 differ from claim 2 in respects unnecessary to describe in detail here.

*Fig.8.*

Trixner deals with non-clogging shoe scrapers. The application states:

> The scraper is advantageously constructed so that the gaps cannot be clogged and the individual cleaning elements can be easily removed and replaced, which greatly facilitates cleaning after extensive use and removal of worn individual scraper elements. According to the invention this result is obtained by detachably inserting the channel-shaped rods which receive the rubber elements in corresponding slots in the flat perpendicular rods, and by providing the scraper elements, made of rubber or the like, with a cross section which is tapered from the surface downward.

One embodiment of the scraper is shown in Figure 3:

**Fig.3**

**2.** U.S. Patent No. 2,031,007, issued February 18, 1936.

### The Rejection

The claims were rejected under 35 U.S.C. § 103 as being unpatentable over a patent to Schulz[2] in view of a patent to Trixner.[3] Schulz deals with structural gratings which may be used for ceilings, walls, flooring for bridges, etc. While most of Schulz's gratings are filled with concrete in use, Schulz discloses an alternate opening grating not filled with concrete in Figure 8:

The examiner considered that it would have been obvious to closely space the wire rod members of Schulz in view of the Trixner patent. The board affirmed, stating:

> It is a matter of notorious knowledge that floor gratings are made with their bars sufficiently close to permit easy walking thereon, such as not to permit woman's narrow heels to be caught therein. In our opinion, the expedient of placing the cross-bars in Fig. 8 of Schulz in close proximity to each other would have been an obvious variant even on the part of persons with less than ordinary skill in the art, particularly in view of Trixner where similar cross members 5 are spaced much closer. The precise spacing is deemed an obvious variant in degree. * * *

### Opinion

Appellant contends that the two references should not be combined because they are from non-analogous arts. Appellant contends that the Patent Office classification of Schulz's patent was in

**3.** Austrian Patent No. 175,037, published May 26, 1953.

"Roads and Pavements," that the classification of Trixner's patent was under "Brushing, Scrubbing and General Cleaning," and that the skilled in the art "would not expect to find grid or grating structures which are installed in floors under the art 'Brushing, Scrubbing and General Cleaning.'" To this the Solicitor responds:

> [A]ppellant is in error in his belief (Br–3) that Schulz is classified in the "Roads and Pavements" art. On the contrary, Schulz is classified with the "Static Structures" art (Class 52), in an area providing for structures having exposed surfaces for increasing friction or reducing wear caused by pedestrian traffic. Also of significance is the fact that the official search notes for this area of Class 52 direct the searcher to Class 15–238, where Trixner is classified, for related art. * * *

While we find the diverse Patent Office classification of the references to be *some* evidence of "non-analogy," and likewise find the cross-reference in the official search notes to be *some* evidence of "analogy," we consider the similarities and differences in structure and function of the inventions disclosed in the references to carry far greater weight. Cf. In re Heldt, 433 F.2d 808, 812, 58 CCPA 701, 706–707 (1970). Here the structural similarities and the functional overlap between pedestrian gratings and shoe scrapers of type shown by Trixner are readily apparent. We conclude that, at the very least, the arts to which the Schulz and Trixner patents belong are *reasonably pertinent* to the art with which appellant's invention deals. See In re Antle, 444 F.2d 1168, 1171–1172, 58 CCPA 1382, 1387 (1971).

We have carefully considered appellant's other arguments. However, we are convinced on the record before us that it would have been obvious for one skilled in the art to arrange the wire rod members of Schulz in closer proximity, as shown by Trixner's scraper rods, should it be desired to avoid the catching of women's heels in pedestrian gratings. Accordingly, the decision of the board is affirmed.

Affirmed.